IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CODY JAY RILEY, <br> TDCJ No. 1750077, | § § § | |
| Petitioner, | § § | |
| V. | § § | No. 3:18-cv-2439-S-BN |
| DIRECTOR, TDCJ-CID, | § § § | |
| Respondent. | § | |

### FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE

Petitioner Cody Jay Riley, a Texas prisoner, has filed a *pro se* application for a writ of habeas corpus under 28 U.S.C. § 2254 as to his convictions for "aggravated sexual assault of a child (younger than 17) with a deadly weapon (the bodily fluids of the defendant, who was positive for human immunodeficiency virus [HIV])," which resulted in concurrent sentences of 70 years of imprisonment. *Riley v. State*, No. 10-11-00439-CR, 2014 WL 1016240, at *1 (Tex. App. – Waco Mar. 13, 2014, pet. ref'd), *aff'g State v. Riley*, No. F45054 (413th Dist. Ct., Johnson Cnty., Tex. Oct. 26, 2011).

The presiding United States district judge has now referred Riley's habeas case to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b) and a standing order of reference.

Prior to this referral, the Court ordered the State to preliminarily respond to the habeas petition to explain whether this case is time barred. *See* Dkt. No. 8. The State argued that it is. *See* Dkt. Nos. 18 & 19. And Riley replied, including assertions that his claimed actual innocence provides a gateway to consider his otherwise

untimely claims. *See* Dkt. No. 20. Relatedly, Drs. Robert Henderson, David Lee, and Steven Ponders submitted an amicus brief in support of Riley. *See* Dkt. No. 21. Both filings present evidence asserted to be new, offering that Riley's viral loads in March, June, and September 2010 show that he is actually innocent of the offense of aggravated sexual assault of a child because his bodily fluids did not qualify as a deadly weapon.

The Court then ordered the State to respond to the reply and amicus and to address whether Riley's actual innocence claim is unexhausted and whether it is appropriate to stay this proceeding to allow Riley to raise the new evidence in state court. *See* Dkt. No. 22. The State responded. *See* Dkt. No. 28. Riley replied. *See* Dkt. No. 30. And a supplement to amicus brief was filed. *See* Dkt. No. 31.

The undersigned now enters these findings of fact, conclusions of law, and recommendation that the Court should dismiss the habeas application with prejudice as time barred.

**Legal Standards**

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) establishes a one-year statute of limitations for federal habeas proceedings brought under 28 U.S.C. § 2254. *See* ANTITERRORISM AND EFFECTIVE DEATH PENALTY ACT OF 1996, Pub. L. 104-132, 110 Stat. 1214 (1996). The limitations period runs from the latest of:

> (A)   the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B)   the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United

>States is removed, if the applicant was prevented from filing by such State action;
>
>(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
>(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

The time during which a properly filed application for state post-conviction or other collateral review is pending is excluded from the limitations period. *See id.* § 2244(d)(2).

The one-year limitations period is also subject to equitable tolling – "a discretionary doctrine that turns on the facts and circumstances of a particular case," *Fisher v. Johnson*, 174 F.3d 710, 713 (5th Cir. 1999), and only applies in "rare and exceptional circumstances," *United States v. Riggs,* 314 F.3d 796, 800 n.9 (5th Cir. 2002) (citing *Davis v. Johnson,* 158 F.3d 806, 811 (5th Cir. 1998)). "[A] litigant is entitled to equitable tolling of a statute of limitations only if the litigant establishes two elements: '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing.'" *Menominee Indian Tribe of Wis. v. United States,* 136 S. Ct. 750, 755 (2016) (quoting *Holland v. Florida,* 560 U.S. 631, 649 (2010)).

Taking the second prong first, "[a] petitioner's failure to satisfy the statute of limitations must result from external factors beyond his control; delays of the petitioner's own making do not qualify." *Hardy v. Quarterman*, 577 F.3d 596, 598 (5th

Cir. 2009) (per curiam) (citation omitted). This "prong of the equitable tolling test is met only where the circumstances that caused a litigant's delay are both extraordinary *and* beyond [the litigant's] control." *Menominee Indian Tribe*, 136 S. Ct. at 756 (emphasis in original).[1]

But "'[t]he diligence required for equitable tolling purposes is reasonable diligence, not maximum feasible diligence.' What a petitioner did both before and after the extraordinary circumstances that prevented him from timely filing may indicate whether he was diligent overall." *Jackson v. Davis*, 933 F.3d 408, 411 (5th Cir. 2019) (quoting *Holland*, 560 U.S. at 653; footnote omitted).

And, most applicable here, a showing of "actual innocence" can also overcome AEDPA's statute of limitations. *See McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013). But the actual innocence gateway is only available to a petitioner who presents "evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error." *Id.* at 401 (quoting *Schlup v. Delo*, 513 U.S. 298, 316 (1995)).

That is, the petitioner's new, reliable evidence must be enough to persuade the Court that "'no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" *Id.* at 386 (quoting *Schlup*, 513 U.S. at 329); *see also Johnson v.*

---

[1] *See, e.g., Farmer v. D&O Contractors*, 640 F. App'x 302, 307 (5th Cir. 2016) (per curiam) (holding that because "the FBI did not actually prevent Farmer or any other Plaintiff from filing suit" but instead "advised Farmer that filing suit would have been against the FBI's interest" and "that the RICO claims could be filed after the investigation concluded," "[a]ny obstacle to suit was ... the product of Farmer's mistaken reliance on the FBI, and a party's mistaken belief is not an extraordinary circumstance" (citing *Menominee Indian Tribe*, 136 S. Ct. at 756-57)).

*Hargett*, 978 F.2d 855, 859-60 (5th Cir. 1992) ("The [United States] Supreme Court has made clear that the term 'actual innocence' means *factual*, as opposed to *legal*, innocence – 'legal' innocence, of course, would arise whenever a constitutional violation by itself requires reversal, whereas 'actual' innocence, as the Court stated in *McCleskey [v. Zant*, 499 U.S. 467 (1991)], means that the person did not commit the crime." (footnotes omitted)); *Acker v. Davis*, 693 F. App'x 384, 392-93 (5th Cir 2017) (per curiam) ("Successful gateway claims of actual innocence are 'extremely rare,' and relief is available only in the 'extraordinary case' where there was 'manifest injustice.' *Schlup*, 513 U.S. at 324, 327. When considering a gateway claim of actual innocence, the district court must consider all of the evidence, 'old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under rules of admissibility that would govern at trial.' *House v. Bell*, 547 U.S. 518, 538 (2006) (internal quotation marks and citations omitted). 'Based on this total record, the court must make "a probabilistic determination about what reasonable, properly instructed jurors would do."' *Id.* (quoting *Schlup*, 513 U.S. at 329). 'The court's function is not to make an independent factual determination about what likely occurred, but rather to assess the likely impact of the evidence on reasonable jurors.' *Id.*" (citations modified)).

## Analysis

I. The Section 2254 application is not timely under AEDPA, and Riley has not established a basis to equitably toll the limitations period.

The only subsections of Section 2254 that plausibly could apply here are Subsections A and D. Riley has not established that this case is timely under either.

And, while the undersigned will address the actual innocence gateway below, Riley fails to provide allegations that could establish either prong of equitable tolling – that he pursued his rights diligently and that an extraordinary circumstance prevented his timely filing of the federal petition.

### A. The petition is not timely under Section 2244(d)(1)(A).

The timeliness of most Section 2254 applications is determined under Subsection A, based on the date on which the judgment became final. A conviction becomes final under AEDPA "when there is no more 'availability of direct appeal to the state courts.'" *Frosch v. Thaler*, No. 2:12-cv-231, 2013 WL 271423, at *1 (N.D. Tex. Jan. 3, 2013) (quoting *Jimenez v. Quarterman*, 555 U.S. 113, 119 (2009)), *rec. adopted*, 2013 WL 271446 (N.D. Tex. Jan. 24, 2013).

Because Riley did not file a petition for certiorari review, his state criminal judgments became final under AEDPA on November 18, 2014 – 90 days after the Texas Court of Criminal Appeals refused Riley's petition for discretionary review. *See Riley v. State*, PD-0427-14 (Tex. Crim. App. Aug. 20, 2014); Dkt. No. 1 at 3; *Roberts v. Cockrell*, 319 F.3d 690, 692 (5th Cir. 2003) (observing that, if a petitioner halts the review process, "the conviction becomes final when the time for seeking further direct review in the state court expires" and noting that the Supreme Court allows 90 days for filing a petition for certiorari following the entry of judgment); SUP. CT. R. 13.

And, "[b]ecause [Riley's] state habeas petition was not filed within the one-year period" that commenced on that date, "it did not statutorily toll the limitation clock." *Palacios v. Stephens*, 723 F.3d 600, 604 (5th Cir. 2013) (citing *Scott v. Johnson*, 227

F.3d 260, 263 (5th Cir. 2000) (in turn citing 28 U.S.C. § 2244(d)(2))); *see* Dkt. No. 1 at 4 (indicating that he filed the state habeas applications in May 9, 2018); *Ex parte Riley*, WR-88,409-01 (Tex. Crim. App. June 6, 2018) (denying habeas corpus relief without written order).

Accordingly, under Subsection A, the Section 2254 application, filed on August 26, 2018 – the date on which Riley certifies that he placed it in the prison mailing system,[2] *see* Dkt. No. 1 at 14 – was filed more than two years and nine months too late.

### B. The petition is not timely under Section 2244(d)(1)(D).

Riley contends in his petition that a 2017 statement by the Assistant U.S. Surgeon General "led to the findings presented in the State Habeas Application, namely the fact that undetectable viral loads are equal to [non-transmissibility] of the HIV virus," further explaining that "[t]his statement and [its] findings were the factual predicate used in the State hearing." Dkt. No. 1 at 13. In its initial response, the State construed these statements as referencing "a 'Dear Colleague' letter from the CDC's Division of HIV/AIDS Prevention dated September 27, 2017." Dkt. No. 18 at 12. And Riley confirmed this in his initial reply. *See* Dkt. No. 20 at 2-3.

Accordingly, insofar as timeliness should be considered under Subsection D,

---

[2] *See* RULE 3(d), RULES GOVERNING SECTION 2254 CASES IN THE UNITED STATES DISTRICT COURTS ("A paper filed by an inmate confined in an institution is timely if deposited in the institution's internal mailing system on or before the last day for filing."); *Uranga v. Davis*, 893 F.3d 282, 286 (5th Cir. 2018) ("We reaffirm that the operative date of the prison mailbox rule remains the date the pleading is delivered to prison authorities.").

the factual predicate provision of the statute of limitations, that provision runs from "the date a petitioner is on notice of the facts which would support a claim, not the date on which the petitioner has in his possession evidence to support his claim." *In re Young*, 789 F.3d 518, 528 (5th Cir. 2015) (citing *Flanagan v. Johnson*, 154 F.3d 196, 199 (5th Cir. 1998)).

When considering allegedly new evidence under this subsection, it matters when a habeas petitioner first knew of – or, through due diligence, could have discovered – "the vital or principal facts underlying [the] claims" supported by the "new evidence." *Vega v. Stephens*, No. 3:14-cv-551-P-BK, 2015 WL 4459262, at *3 (N.D. Tex. July 20, 2015) (defining "the factual predicate" as "the vital or principal facts underlying [a petitioner's] claims" (citing *McAleese v. Brennan*, 483 F.3d 206, 214 (3d Cir. 2007); *Rivas v. Fischer*, 687 F.3d 514, 535 (2d Cir. 2012))); *see also Blackman v. Stephens*, No. 3:13-cv-2073-P-BN, 2016 WL 777695, at *5 (N.D. Tex. Jan. 19, 2016) ("Under Section 2244(d)(1)(D), the applicable date is the date on which vital facts are first discovered, not when evidence to support those facts is first acquired."), *rec. accepted*, 2016 WL 759564 (N.D. Tex. Feb. 26, 2016); *cf. Christian v. Bracy*, No. 2:18-CV-652, 2019 WL 2314631, at *3 (S.D. Ohio May 31, 2019) ("The term 'factual predicate' in § 2244(d)(1)(D) refers to factual evidence and events, not legal conclusions.").

And, even if "the 'new evidence' constitutes a 'factual predicate' within the meaning of Subsection D, that 'new evidence' [must] serve as the basis of a *cognizable* habeas claim." *E.g.*, *Glenn v. Cain*, Civ. A. No. 13-6595, 2014 WL 5040713, at *2 n.18

(E.D. La. Sept. 30, 2014) (collecting cases).

The "new evidence" here may therefore not support a stand-alone innocence claim, as a substantive claim of "actual innocence" is not recognized as an independent ground for federal habeas relief. *See Perkins*, 569 U.S. at 392 ("We have not resolved whether a prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence." (citing *Herrera v. Collins*, 506 U.S. 390, 404-05 (1993))); *see also, e.g.*, *House*, 547 U.S. at 554-55; *Reed v. Stephens*, 739 F.3d 753, 766 (5th Cir. 2014); *cf. Schlup*, 513 U.S. at 314 (distinguishing "procedural" claims of innocence, which are based on a separate, underlying claim that a defendant was denied "the panoply of protections afforded to criminal defendants by the Constitution").

But Riley also raises, for example, the constitutional effectiveness of his trial counsel. To trigger Subsection D as to these claims, Riley should tie the "new evidence" to counsel's performance to explain why this evidence constitutes a new factual predicate for a claim under the Sixth Amendment – a claim that Riley could not have raised before. Riley has not done this. Instead, he argues, for example, that "but for the ineffective-assistance, lab reports from Quest Diagnostics that are readily available under a subpoena would/should have been obtained to counter the state's claims that 'bodily fluids' of an HIV positive person can be even considered a deadly weapon. These labs would have proven that the petitioner's viral load was suppressed as far back as 2008, well before the date of the offenses." Dkt. No. 1 at 7.

Further, to the extent that Riley asserts a claim of ineffective assistance of

counsel based on an advancement in scientific knowledge as to the transmissibility of HIV, he has not explained how his counsel should be responsible for failing to anticipate this advancement and therefore tie such a claim to the 2017 "Dear Colleague" letter. *Cf. United States v. Fields*, 565 F.3d 290, 294 (5th Cir. 2009) ("Although 'a failure of counsel to be aware of prior controlling precedents in even a single prejudicial instance might render counsel's assistance ineffective under the Sixth Amendment,' *Nelson v. Estelle*, 642 F.2d 903, 908 (5th Cir. Unit A Apr. 1981), we have repeatedly held that "there is no general duty on the part of defense counsel to anticipate changes in the law,"' *e.g.*, *Green v. Johnson*, 116 F.3d 1115, 1125 (5th Cir. 1997) (citing *Nelson*, 642 F.2d at 908); *Morse v. Texas*, 691 F.2d 770, 772 n.2 (5th Cir. 1982).").

Stepping back, to examine the 2017 "Dear Colleague" letter itself, this "new evidence" does not itself break new ground. As the State has explained,

> [t]he letter, cosigned by an Assistant Surgeon General, states the following:
>> Scientific advances have shown that antiretroviral therapy (ART) preserves the health of people living with HIV. We also have strong evidence of the prevention effectiveness of ART. When ART results in viral suppression, defined as less than 200 copies/ml or undetectable levels, it prevents sexual HIV transmission. *Across three different studies*, including thousands of couples and many thousand [sic] acts of sex without a condom or pre-exposure prophylaxis (PrEP), no HIV transmissions to an HIV-negative partner were observed when the HIV-positive person was virally suppressed. This means that people who take ART daily as prescribed and achieve and maintain an undetectable viral load have effectively no risk of sexually transmitting the virus to an HIV-negative partner.
>
> [Dkt. No. 19-35] at 79-80 (emphasis added).
>
> However, the three studies referred to in the letter date from as

> early as 2011. Presumably, the first is the HPTN 052 study, "conducted primarily in heterosexual serodifferent couples [where one partner is HIV-positive and the other HIV-negative]," which "demonstrated a 96% reduction in HIV transmission risk in HIV-positive adults randomized to early ART initiation compared with the group that deferred treatment." *Id.* at 48, 57, 72. The other two are the PARTNER and "Opposites Attract" studies, examined in articles filed with Riley's state habeas application. *Id.* at 47-63. The findings of the PARTNER study, in particular, were published in the Journal of the American Medical Association on July 12, 2016. *See id.* at 48. The PARTNER study "provides the first estimate to our knowledge of HIV transmission risk through condomless anal sex in which the HIV-positive partner is taking ART with suppressed plasma HIV viral load." *Id.* at 55. The study included both heterosexual couples and men who have sex with men ("MSM"). *Id.* at 48. In a factsheet filed by Riley, it is explained that the "Opposites Attract" study explores the same research question as the PARTNER study. *Id.* at 60 ("Opposites Attract is one of only two studies ever to be conducted that explores this research question in gay men. The other study is called PARTNER, which is currently being conducted in Europe and the UK. In July 2016, the PARTNER Study reported its Phase 1 results").

Dkt. No. 18 at 12-13.

Accordingly, the 2017 "Dear Colleague" letter "does not constitute a new fact" because it recounts studies from years earlier. *Rues v. Denney*, 643 F.3d 618, 622 (8th Cir. 2011) ("It is true that Rues could not have exercised due diligence to discover the study, as the study was not published until 2009, well after Rues' conviction. The study, however, does not constitute a new fact. The study calls into question the validity of methods used to analyze bunter marks on ammunition casings. The study is not the first source to analyze this question."); *see also Toney v. Quarterman*, Civ. A. No. H-09-0083, 2009 WL 2356104, at *7 (S.D. Tex. July 27, 2009) ("Merely alleging new evidence to support facts that were known at an earlier date does not suffice to establish a new factual predicate."); *Adams v. Wenerowicz*, Civ. A. No. 13-3538, 2013 WL 6692742, at *1 n.2 (E.D. Pa. Dec. 19, 2013) ("Accepting for the sake of argument

- 11 -

that the scientific studies and social science evidence Petitioner identifies could constitute the 'factual predicate' referred to in the AEDPA, Petitioner's contention still fails, as more than one year has passed since that evidence was described at length in *Roper [v. Simmons*, 543 U.S. 551 (2005)] and *Graham [v. Florida*, 560 U.S. 48 (2010)].").

II.   Riley has not presented evidence that allows him to pass through the actual-innocence gateway and thus circumvent the statute of limitations.

Preliminarily, because actual innocence is not an independent ground for federal habeas relief, a Section 2254 applicant need not first exhaust assertions of actual innocence in state court. *See, e.g.*, *Labrecque v. Warden, N. N.H. Corr. Facility*, No. 14-cv-503-JD, 2015 WL 3745, at *2 (D.N.H. June 15, 2015) ("[T]he issue of actual innocence is raised to provide an exception to the time bar and is not a claim that is subject to the exhaustion requirement of § 2254(b)." (citations omitted)).

So this Court need not consider a stay of this proceeding to allow Riley to return to state court. *Cf. Slater v. Davis*, 717 F. App'x 432, 439 (5th Cir. 2018) ("Permission to return to state court is a safety valve for unexhausted claims….").

And this Court may consider the evidence supporting Riley's innocence assertions without running afoul of 28 U.S.C. § 2254(d) and *Cullen v. Pinholster*, 563 U.S. 170 (2011), under which a federal court cannot expand the record on a claim adjudicated on the merits in state court. *See, e.g.*, *Clemmons v. Warden, Lebanon Corr. Inst.*, No. 3:11-cv-465, 2012 WL 4811122, at *8 (S.D. Ohio, Oct. 10, 2012) ("*Pinholster* does not by its own terms apply to the actual innocence exception to either procedural default or the statute of limitations. The premise of the actual

innocence exception is that the habeas petitioner is presenting new evidence not considered by the state courts. Nothing in the AEDPA purports to limit what new evidence a petitioner can present on that question."), *rec. adopted*, 2013 WL 157142 (S.D. Ohio Jan. 15, 2013).

"'[A]ctual innocence, if proved, serves as a gateway through which a petitioner may pass [even if] the impediment is a procedural bar ... or ... expiration of the statute of limitations.'" *Hancock v. Davis*, 906 F.3d 387, 389 (5th Cir. 2018) (quoting *Perkins*, 569 U.S. at 386). But "a credible gateway 'claim [of actual innocence] requires [the] petitioner to support his allegations of constitutional error with new reliable evidence ... that was not presented at trial.'" *Id.* (quoting *Schlup*, 513 U.S. at 324). "Examples of 'new reliable evidence' are 'exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence.'" *Fratta v. Davis*, 889 F.3d 225, 232 (5th Cir. 2018) (quoting *Schlup*, 513 U.S. at 324).

And "'[t]he habeas court must [consider] the petitioner's innocence in light of all the evidence, including that alleged to have been illegally admitted ... and evidence tenably claimed to have been wrongly excluded or to have become available only after the trial[,' and then] must 'make a probabilistic determination about what reasonable, properly instructed jurors would do' after considering all of the evidence." *Id.* (quoting *Schlup*, 513 U.S. at 328, 329; citation omitted).

As a result, "tenable actual-innocence gateway pleas are rare: '[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him

guilty beyond a reasonable doubt.'" *Perkins*, 569 U.S. at 386 (quoting *Schlup*, 513 U.S. at 329).

> The Supreme Court has not explicitly defined what constitutes "new reliable evidence" under the *Schlup* actual-innocence standard…. [And the Fifth Circuit] "has yet to weigh in on the circuit split concerning what constitutes 'new' evidence." *Fratta*, 889 F.3d at 232….
> 
> [But e]vidence does not qualify as "new" under the *Schlup* actual-innocence standard if "it was always within the reach of [petitioner's] personal knowledge or reasonable investigation." *Moore v. Quarterman*, 534 F.3d 454, 465 (5th Cir. 2008). Consequently, though [the Fifth Circuit has] not decided what affirmatively constitutes "new" evidence, [it has] explained what does not.

*Hancock*, 906 F.3d at 389-90 (footnote omitted and citations modified).

Here, even if the 2017 "Dear Colleague" letter qualifies as "new" under *Schlup*, it does not show that "no juror, acting reasonably, would have voted to find [Riley] guilty beyond a reasonable doubt." *Schlup*, 513 U.S. at 329. That is, the letter does not show that Riley did not commit the crimes of which he was convicted; it instead challenges the legal sufficiency of the evidence underlying those convictions. *See Johnson*, 978 F.2d at 859-60 ("'[L]egal' innocence [arises] whenever a constitutional violation by itself requires reversal, whereas 'actual' innocence … means that the person did not commit the crime."); *Crabtree v. Davis*, No. 2:16-cv-104, 2017 WL 2665031, at *1 (N.D. Tex. June 20, 2017) ("Petitioner does not present evidence of innocence so strong that a court cannot have confidence in the outcome of the underlying proceeding. Further, petitioner's assertions support only a challenge to the legal sufficiency of the evidence to support his conviction, not a showing of factual innocence.").

**Recommendation**

The Court should dismiss Petitioner Cody Jay Riley's application for a writ of habeas corpus under 28 U.S.C. § 2254 with prejudice as time barred.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: February 26, 2021

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE