# United States District Court
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| CODY JAY RILEY, <br> TDCJ No. 1750077 | § <br> § <br> § | |
| v. | § <br> § | CIVIL ACTION NO. 3:18-CV-2439-S-BN |
| DIRECTOR, TDCJ-CID | § <br> § | |

### ORDER ACCEPTING FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Before the Court are the Findings, Conclusions, and Recommendation of the United States Magistrate Judge ("FCR") [ECF No. 46]. Petitioner Cody Jay Riley ("Petitioner") filed Petitioner's Objections to the Findings, Conclusions, and Recommendation of the United States Magistrate Judge [ECF No. 49]. *Amici Curiae*, Drs. Robert Henderson, David Lee, and Steven Pounders (collectively, "*Amici*") likewise filed *Amicus Curiae* Objections to the Magistrate's Findings, Conclusions, and Recommendation [ECF No. 50].[1] Petitioner then moved to amend his objections. *See* ECF No. 51. The Court granted this request on August 16, 2021. *See* ECF No. 55. Petitioner's Objections to the Findings, Conclusion and Recommendation of the United States Magistrate Judge (Amended) ("Amended Objections") [ECF No. 56] supersede Petitioner's earlier objections. The Court ordered Respondent Bobby Lumpkin, Director, Texas Department of Criminal Justice, Correctional Institutions Division ("Respondent') to respond to Petitioner's

---

[1] The Court, however, declines to consider the objections of the *Amici*. Unlike the Federal Rules of Appellate Procedure and the U.S. Supreme Court Rules, the Federal Rules of Civil Procedure do not contemplate *amici* in federal trial practice. Accordingly, "[t]he extent, if any, to which an *amicus curiae* should be permitted to participate in a pending action is solely within the broad discretion of the district court." *Okechuku v. United States*, No. 3:19-cv-1005-B-BT, 2019 WL 6497876, at *1 (N.D. Tex. Dec. 3, 2019). Moreover, 28 U.S.C. § 636(b), Federal Rule of Civil Procedure 72(b), and Local Rule 72.2 all permit "parties" to file objections to findings, conclusions, and recommendations of a magistrate judge. *Amici* are not parties to a litigation. *Morales v. Turman*, 820 F.2d 728, 732 (5th Cir. 1987) (citing *Miller-Wohl Co. v. Comm'r of Lab. & Indus. State of Mont.*, 694 F.2d 203, 204 (9th Cir. 1982).

Amended Objections, and Respondent filed Respondent Lumpkin's Response to Petitioner's Objections to the Magistrate's Report and Recommendation with Brief in Support [ECF No. 60]. The Court has also considered Petitioner's Reply to Respondent's Response [ECF No. 65].

The District Court reviewed *de novo* those portions of the FCR to which objections were made and reviewed the remaining portions of the FCR for plain error. 28 U.S.C. § 626(b)(1)(C). For the reasons that follow, the Court **OVERRULES** Petitioner's Amended Objections and **ACCEPTS** the FCR as supplemented herein. Accordingly, Petitioner's application for writ of habeas corpus under 28 U.S.C. § 2254 is **DISMISSED** for the reasons articulated in the FCR and below.

## I.   BACKGROUND

The factual background and procedural history of this case are laid out at length in the FCR. Petitioner, a Texas prisoner, filed a *pro se* application for writ of habeas corpus under 28 U.S.C. § 2254 challenging his conviction of two counts of "aggravated sexual assault of a child (younger than 17) with a deadly weapon (the bodily fluids of [Petitioner], who was positive for human immunodeficiency virus [HIV])," that resulted in concurrent sentences of 70 years of imprisonment. *Riley v. State*, No. 10- 11-00439-CR, 2014 WL 1016240, at *1 (Tex. App.—Waco Mar. 13, 2014, pet. ref'd), *aff'g State v. Riley*, No. F45054 (413th Dist. Ct., Johnson Cnty., Tex. Oct. 26, 2011); *see also* Pet. for Writ of Habeas Corpus [ECF No. 1]. The first of the two assaults occurred in early June 2010; the second occurred on June 19, 2010. *Riley*, 2014 WL 1016240, at *1.

Petitioner bases his application in significant part on a "Dear Colleague" letter published by the CDC Division of HIV/AIDS Prevention on September 27, 2017 ("CDC Letter"). Pet. for Writ of Habeas Corpus at 9; Pet'r's. Reply Br. [ECF No. 20] at 2-3. This letter describes three

scientific studies published between 2011 and 2016 evaluating the risk that an HIV-positive person taking antiretroviral therapy ("ART") with a suppressed viral load could transmit the virus. Pet'r's. Reply Br. at 2-3. Petitioner contends that, based on the conclusion reached by the CDC Letter "that people who take ART daily as prescribed and achieve and maintain an undetectable viral load have effectively no risk of sexually transmitting the virus to an HIV-negative partner," it was impossible for him to transmit the virus to the victim at the time of either assault. *Id.* at 3. Petitioner offers three lab tests from March 9, 2010, June 16, 2010, and September 1, 2010 showing that his viral load was undetectable shortly before and after the assaults. *Id.* at 4.

The Magistrate Judge concluded that Petitioner's application is not timely under either 28 U.S.C. §§ 244(d)(1)(A) or (D), and that Petitioner is not entitled to equitable tolling. *See* FCR 5-12. As the FCR explains, under § 244(d)(1)(A) Petitioner's application was filed more than one year after his convictions became final, and the CDC Letter is not a "new fact" for the purposes of § 244(d)(1)(D) "because it constitutes studies from years earlier." FCR 11. Nor can the CDC Letter itself serve as the basis for a cognizable habeas claim because there is no stand-alone habeas claim for actual innocence. FCR 8-11. This Court agrees that Petitioner's application is time-barred, and with the Magistrate Judge's reasoning.

Petitioner also argues that, even if his application is untimely, the CDC Letter is "new evidence" that negates one of the elements of the crime for which he was convicted—the presence of a deadly weapon. Petitioner urges that he is asserting a gateway claim of "actual innocence" which would overcome the time bar and allow the Court to consider the merits of his application despite its untimeliness. The Court agrees with the Magistrate Judge that Petitioner has not asserted a colorable claim of actual innocence.

3

## II.     PETITIONER'S OBJECTIONS

Petitioner levels seven separate objections to the FCR, which can be grouped into three categories: (1) objections which relate to the timeliness of Petitioner's application; (2) objections which relate to Petitioner's actual innocence claim, and (3) one objection which relates to Petitioner's ineffective assistance of counsel claim.

Petitioner's third, fourth, fifth, and sixth objections relate to the timeliness of Petitioner's application for writ of habeas corpus under 28 U.S.C. § 2244(d)(1). Petitioner objects that the "Magistrate erred by not ordering an evidentiary hearing to establish the factual predicate under 28 U.S.C. § 2244(d)(1)(D)." Am. Objs. 7 (Objection 3). Petitioner argues that because the studies discussed in the CDC Letter "left ample gray area in scientific uncertainty," he could not have asserted at trial that undetectable HIV is untransmittable until the CDC Letter itself announced such a conclusion. *Id.* at 7-8. And, because he was imprisoned at the time, Petitioner claims he could not have become aware of the CDC Letter until it was mailed to him on January 20, 2018. *Id.* Because of this purported uncertainty surrounding the CDC Letter, Petitioner claims that the Court should have held an evidentiary hearing to determine what to use as factual predicate for the purposes of AEDPA's statute of limitations. *Id.* In a separate objection, Petitioner asserts that his "application was in fact timely under § 2244(d)(1)(D)" because he was not aware of the CDC Letter until January 20, 2018. *Id.* at 9-11 (Objection 4). Petitioner also objects that "[t]he issue of timeliness of Petitioner's Application was abandoned" because the Court did not address the issue in its January 22, 2019 Order. *Id.* at 11 (Objection 5). Finally, Petitioner argues that the Magistrate Judge erred by failing to address whether "neglect by Petitioner's attorney could provide an exception for an otherwise time-barred application." *Id.* at 11-12 (Objection 6).

Petitioner's first and second objections concern whether he has asserted a colorable gateway claim of actual innocence that would allow his otherwise time-barred application to be considered on the merits. Specifically, Petitioner asserts that he "is innocent of the charge convicted because of newly discovered science, U=U (Undetectable = Untransmittable) is clear and convincing evidence that no juror would have convicted Petitioner of aggravated sexual assault." *Id.* at 2 (Objection 1). Petitioner separately objects that "[d]ue to a Constitutional error, the Petitioner should be allowed to pass through the 'gateway' and have his application heard on its Merits," because Petitioner claims he is both factually and legally innocent. *Id.* at 4, 7 (Objection 2). These objections largely recapitulate the arguments in Petitioner's earlier briefing. *See* ECF Nos. 20, 21, 30, 31.

Petitioner's last objection relates to his ineffective assistance of counsel claim. Specifically, Petitioner objects that the "Magistrate misinterpreted Petitioner's Ineffective Assistance Claims" by focusing on their relation to developments in the scientific understanding of HIV transmission after Petitioner's trial. *Id.* at 12 (Objection 7). In his objection, Petitioner clarifies that "[t]hese ineffective assistance claims pertain to HIV transmissibility as we understood it at the time of trial." *Id.* 12. Petitioner claims trial counsel failed to investigate his case or call witnesses to refute the State's expert testimony, and failed to object to a purportedly overbroad definition of "bodily fluids" employed at trial. *Id.* at 12-16. This objection relates to the merits of Petitioner's application for writ of habeas corpus. Because the Court concludes that Petitioner's application is time-barred, the Court need not resolve this objection.[2]

---

[2] The Court agrees which the Magistrate Judge, however, that "to the extent that [Petitioner] asserts a claim of ineffective assistance of counsel based on an advancement in scientific knowledge as to the transmissibility of HIV, he has not explained how his counsel should be responsible for failing to anticipate this advancement and therefore tie such a claim to the [CDC Letter]." FCR 9-10.

### III.     ANALYSIS

#### A.     *AEDPA Time Bar*

The Court overrules Petitioner's third and fourth objections for the reasons articulated in the FCR. *See* FCR 6-12. The Court agrees with the Magistrate Judge's analysis of the CDC Letter, its underlying studies, and the conclusion that the CDC Letter "does not constitute a new fact because it constitutes studies from years earlier." FCR 11 (quotations omitted). The Court was not required to hold an evidentiary hearing to make these determinations. *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) ("[I]f the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing.").

The Court also overrules Petitioner's fifth objection. Petitioner argues that the court abandoned the issue of whether his petition is timely because the court did not address the issue in its January 22, 2019 Order [ECF No. 22]. But the court had simply not yet ruled on the issue. On September 14, 2018, the Magistrate Judge ordered Respondent to file a preliminary response explaining "whether respondent believes that this action is barred by limitations under . . . AEDPA; and whether petitioner is entitled to equitable tolling." ECF No. 8. Then, in his reply, Petitioner "submit[ed] new evidence consisting of affidavits from three medical doctors, and lab reports showing his HIV viral loads in March, June, and September 2010" which Petitioner argued "shows he is actually innocent of the offense of aggravated sexual assault of a child because his bodily fluids did not qualify as a deadly weapon." ECF No. 22 at 1. As a result, the Magistrate Judge ordered further briefing on the new evidence and the issue of exhaustion. *Id.* The January 22, 2019 Order was not a ruling on the timeliness of Petitioner's application, an issue which remained *sub judice* pending the additional briefing ordered by the Magistrate Judge.

Finally, the Court overrules Petitioner's sixth objection. Petitioner claims that he was assisted in preparing his petition for discretionary review in state court by a law student who had "agreed to come aboard officially at petitioner's attorney of record" once he passed the bar. ECF No. 20 at 6. Petitioner claims this attorney "assured petitioner . . . that his state habeus [sic] would be filed." *Id.* However, as Respondent points out, nothing apart from Petitioner's unsubstantiated assertions supports his claims on this point. *See Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983) ("Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his *pro se* petition (in state and federal court), unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value.").

### B.   *Actual Innocence*

As explained in the FCR, a claim of actual innocence, if proven, allows a first-time federal habeas petitioner to overcome the one-year statute of limitations and have the underlying habeas claim considered on the merits. *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013); *House v. Bell*, 547 U.S. 518, 537 (2006). "To be credible, [an actual innocence] claim requires [the applicant] to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

Actual innocence is different from legal innocence. "Actual innocence means that the person did not commit the crime, while legal innocence arises when a constitutional violation by itself would require reversal." *Morris v. Dretke*, 90 F. App'x. 62, 70 (5th Cir. 2004) ("Because Morris is not arguing that he was not the person who committed the crime, the 'actual innocence' exception is not available to him.") (citing *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992)); *McGowen v. Thaler*, 675 F.3d 482, 500 (5th Cir. 2012) ("Proving such a claim is daunting [and

requires] the petitioner to show, as a factual matter that he did not commit the crime of conviction."); *see also Sawyer*, 505 U.S. at 341 ("[T]he concept of 'actual innocence' is easy to grasp . . . [a] prototypical example . . . is the case where the State has convicted the wrong person of the crime."). Only a claim of actual innocence can serve as a gateway to overcome the statute of limitations; legal innocence cannot.

"Tenable actual innocence claims are rare because the applicant must show 'that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" *Tyler v. Davis*, 768 F. App'x. 264, 265 (5th Cir. 2019), *cert. denied*, 140 S. Ct. 277 (2019) (quoting *Perkins*, 569 U.S. at 386). "Therefore, a credible claim must be supported by 'new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial.'" *Floyd v. Vannoy*, 894 F.3d 143, 155 (5th Cir. 2018) (quoting *Schlup*, 513 U.S. at 324). "Actual innocence is then demonstrated only when the court scrutinizes the likely impact on reasonable jurors of the overall, newly supplemented record to conclude that, in the light of all evidence—both the evidence presented at trial and that newly discovered—no juror, acting reasonably, would have voted to find [petitioner] guilty beyond a reasonable doubt." *Id.* (cleaned up).

The Magistrate Judge concluded that the CDC Letter does not show that no reasonable juror would have voted to find Petitioner guilty beyond a reasonable doubt, because it "does not show that [Petitioner] did not commit the crimes of which he was convicted; it instead challenges the legal sufficiency of the evidence underlying those convictions." FCR 14. The Court agrees with the conclusion of the Magistrate Judge and overrules Petitioner's first and second objections.

In addition to the reasons expressed in the FCR, the Court notes that Petitioner has not offered "new evidence" in support of his actual innocence claim. "Evidence does not qualify as

'new' under the *Schlup* actual-innocence standard if 'it was always within the reach of [petitioner's] personal knowledge or reasonable investigation.'" *Tyler*, 768 F. App'x. at 265 (quoting *Hancock v. Davis*, 906 F.3d 387, 390 (5th Cir. 2018)). Even if the CDC Letter and the studies on which it was based did not exist until after Petitioner's conviction became final, Petitioner did have within his reach the lab reports purportedly showing that he had a suppressed viral load shortly before and after the assaults. Even though these reports were not presented to the trial court, they were accessible to Petitioner at the time of trial. Without these reports, Petitioner's actual innocence claim fails, because he cannot show that his viral load was undetectable—much less untransmittable—at the time of the assault.

In any event, the Court finds that the CDC Letter would constitute impeachment evidence. As the Supreme Court has explained, "impeachment evidence provides no basis for finding" actual innocence because "the evidence is a step removed from evidence pertaining to the crime itself." *Calderon v. Thompson*, 523 U.S. 538, 563 (1998). The Fifth Circuit has held that new evidence of actual innocence must be "material, not merely cumulative or impeaching." *Lucas v. Johnson*, 132 F.3d 1069, 1076 n.3 (5th Cir. 1998); *see also Shank v. Vannoy,* No. 16-30994, 2017 WL 6029846, at *2 (5th Cir. Oct. 26, 2017); *Herrero v. Lumpkin*, No. 19-CV-2027, 2020 WL 5232995, at *14 (S.D. Tex. Sept. 2, 2020), *appeal dismissed*, No. 20-20534, 2021 WL 1511677 (5th Cir. Mar. 9, 2021).

At trial, the State offered the expert testimony of Dr. Arthur Raines, who stated that it was "correct" that "even if you're getting treatment for HIV, you can still infect another individual." ECF No. 19 Ex. 22 at 43. Evidence was likewise introduced that Petitioner was taking an antiretroviral drug for the treatment of HIV. Petitioner does not argue that he did not perform the acts in question. Instead, Petitioner challenges whether HIV in the bodily fluids of an individual

9

with an undetectable viral load legally qualifies as a deadly weapon, as was testified by Dr. Raines. The CDC Letter and its underlying studies offer a different scientific perspective than the one that was offered at trial. Such impeachment evidence is insufficient to support an actual innocence claim.

Accordingly, Petitioner's challenge amounts to a challenge to the sufficiency of the evidence, not actual innocence. Challenges to the sufficiency of the evidence are not adequate to pass through the *Schlup* actual innocence gateway. *Lucas*, 132 F.3d at 1076 n.3 ("[E]vidence . . . more aptly described as simply corroborative of the . . . defense presented to the jury" is insufficient to support a credible claim of actual innocence); *accord House*, 547 U.S. at 538 ("[T]he gateway actual-innocence standard is 'by no means equivalent to the standard of *Jackson v. Virginia*, 443 U.S. 307 (1970),' which governs claims of insufficient evidence.") (quoting *Schlup*, 513 U.S. at 330)).

Ultimately, the actual innocence standard articulated in *Schlup* "does not merely require a showing that a reasonable doubt exists in the light of the new evidence, but rather that no reasonable juror would have found the defendant guilty." *Bosley v. Cain*, 409 F.3d 657, 664 (5th Cir. 2005) (quoting *Schlup*, 513 U.S. at 329). Indeed, Petitioner's counsel argued at trial (based on testimony from Dr. Raines) that because improved treatments had extended the life expectancy of HIV-positive individuals by decades, HIV could not be considered a deadly weapon. *See* ECF No. 19, Ex. 22 at 83. The CDC Letter and Petitioner's lab tests may bolster this argument, but they do not establish that no reasonable juror would have voted to convict Petitioner of aggravated sexual assault.

## IV.    CERTIFICATE OF APPEALABILITY

Considering the record in this case and pursuant to Federal Rule of Appellate Procedure 22(b), Rule 11(a) of the Rules Governing §§ 2254 and 2255 proceedings, and 28 U.S.C. § 2253(c), the Court **DENIES** a certificate of appealability. The Court adopts and incorporates by reference the FCR in support of its finding that the Petitioner has failed to show that (1) reasonable jurists would find this Court's "assessment of the constitutional claims debatable or wrong," or (2) reasonable jurists would find "it debatable whether the petition states a valid claim of the denial of a constitutional right" and "debatable whether [this Court] was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).[3]

In the event Petitioner files a notice of appeal, he must either pay the appellate filing fee of $505.00 or move for leave to proceed *in forma pauperis* on appeal.

**SO ORDERED.**

DATED September 24, 2021

*/s/ Karen Gren Scholer*
**KAREN GREN SCHOLER**
**UNITED STATES DISTRICT JUDGE**

---

[3] Rule 11 of the Rules Governing §§ 2254 and 2255 Cases, as amended effective on December 1, 2009, reads as follows:

> (a) Certificate of Appealability. The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue. If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2). If the court denies a certificate, the parties may not appeal the denial but may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22. A motion to reconsider a denial does not extend the time to appeal.
>
> (b) Time to Appeal. Federal Rule of Appellate Procedure 4(a) governs the time to appeal an order entered under these rules. A timely notice of appeal must be filed even if the district court issues a certificate of appealability.